IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR 108-020 |
| | ) | |
| WYCLIFFE DOUGLAS CAPPS | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

In the above-captioned criminal case, the government has accused Defendant Wycliffe Douglas Capps of Possession of a Machinegun and Receipt of a Firearm While Under Felony Indictment. The matter is now before the Court on Defendant's motion to suppress. (Doc. no. 10). For the reasons developed below, the Court **REPORTS** and **RECOMMENDS** that the motion to suppress be **DENIED**.

I. FACTS[1]

On July 24, 2007, pursuant to a search warrant signed by Richmond County Magistrate Judge William Jennings, state and federal law enforcement officials searched Defendant's home and seized, *inter alia*, a machinegun and pistol that are the subject of the instant indictment. (Doc. no. 10, p. 1; doc. no. 11, p. 1). Richmond County Investigator Robin Ashmore ("Inv. Ashmore") signed the affidavit in support of the search warrant.

---

[1] The facts are based on the information in Defendant's motion to suppress and the government's response thereto. (Doc. nos. 10, 11). As discussed in detail below, Defendant did not come forth with sufficient facts to warrant an evidentiary hearing, and thus, the Court heard only argument from counsel at the hearing convened on April 15, 2008; there was no evidence admitted nor testimony received at the April 15th hearing.

(Doc. no. 11, USA 00039-00047 (*hereinafter* "Aff.")). As described in more detail below, in that affidavit, Inv. Ashmore detailed information collected during his interviews of Pastor Robert Thomas and his wife, Joyce Thomas, who were affiliated with the First Alliance Church on Ingleside Drive, a church located next door to Defendant's residence that had been the location of recent criminal activity. The affidavit also included information about Defendant's criminal history and the conclusions drawn by Inv. Ashmore based on his law enforcement training and experience.

Inv. Ashmore had recently interviewed the Pastor and his wife concerning a suspected arson at the First Alliance Church during the week prior to the search of Defendant's residence.[2] (Aff., ¶¶ 6, 10). According to Inv. Ashmore, the Thomases stated that Defendant had represented himself as a law enforcement officer three to four times during the past several years. (Id. ¶ 10). In fact, Inv. Ashmore reported that one day prior to his July 20, 2007 interview with the Thomases, when Joyce Thomas asked Defendant if he was the officer living next door, Defendant responded affirmatively. (Id.). Inv. Ashmore also discovered during the course of his investigation, and stated in his affidavit, that Defendant had several prior arrests and charges from 1998 through 2005 for impersonating a public officer or employee and/or impersonating a police officer; Defendant also had a first-offender conviction from 2006 for impersonating a police officer. (Id. ¶ 11).

---

[2]On July 18, 2007, there was a suspected arson at First Alliance Church. A caller identifying himself as "Sam Sibley" made a 9-1-1 call reporting the fire, and Richmond County deputies who listened to the tape identified the voice of the 9-1-1 caller as Defendant, who lived adjacent to the First Alliance Church. Sam Sibley, the Chief Public Defender in Richmond County, confirmed to authorities that he did not place the 9-1-1 call. (Aff., ¶ 8).

Inv. Ashmore additionally stated in his affidavit that during his approximately 11 years of law enforcement experience, he had "numerous hours of law enforcement training to include education in areas relating to the law of impersonating a police officer." (Id. ¶ 1). Furthermore, based upon Defendant's statements that he was a law enforcement officer, Inv. Ashmore stated in his affidavit that there was reason to believe that Defendant unlawfully possessed "law enforcement related items including but not limited to law enforcement identification, badges, uniforms, radios, scanners, sirens, blue lights and other items pertaining to the impersonation of law enforcement officers."[3] (Id. ¶ 12). Based on Inv. Ashmore's law enforcement experience, he knew that subjects involved with impersonating law enforcement officers "often maintain items associated with law enforcement officers to include but not limited to law enforcement identification, badges, uniforms, radios, scanners, sirens, blue lights and other items related to impersonating a police officer in their residence, vehicles, sheds and outbuildings." (Id. ¶ 13).

Defendant was arrested by Richmond County authorities after the execution of the search warrant issued by Magistrate Judge Jennings, based on Inv. Ashmore's affidavit, uncovered

> six handguns, two rifles and a shotgun . . . in [Defendant's] residence or vehicle, along with crime scene tape, handcuffs, an Alcosensor, OC spray, a card containing South Carolina Highway Patrol 10-codes, a Bushnell speed detection device, a South Carolina Patrol ticket folder, a Columbia County badge, and 10 flex cuffs. (USA00038) Also of note, [Defendant's] car contained various items that would depict law enforcement affiliation, such as a shotgun affixed to the roof of the vehicle, lights in the front and rear

---

[3]Defendant argues, and the government does not refute, that "[t]here is nothing in the record indicating that Defendant . . . had been seen with any of the items listed in the affidavit." (Doc. no. 10, p. 2, ¶ 10).

3

windows, a police-style radio mounted to the front floor console, and a decal stating "Caution K9 Stay Back." (USA00022)

(Doc. no. 11, p. 2).

## II. ANALYSIS

### A. Probable Cause Properly Established

Defendant argues that probable cause did not exist to support the issuance of a search warrant for his residence because the comments attributed to him by the Thomases about being a law enforcement officer were apparently made in passing over the course of a two and a half year period and not in the context of attempting to perform any police duties. (Doc. no. 10, Br., p. 1). Defendant also contends that there was no information that any of the items listed in the search warrant were in his residence; nor was there any link, according to Defendant, between the his residence and any criminal activity. (Id. at 2). The government counters that the information provided by the Thomases concerning Defendant's representations that he was a law enforcement officer, along with Inv. Ashmore's training and experience related to the offense of impersonating an officer, provided sufficient probable cause for Magistrate Judge Jennings to issue a warrant to search Defendant's residence and vehicle. (Doc. no. 11, p. 3). The government has the better argument.

Whenever a search warrant application is presented to a judicial officer, the judicial officer must

> make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit. . . , including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

4

Illinois v. Gates, 462 U.S. 213, 238 (1983); see also United States v. Brundidge, 170 F.3d 1350, 1352 (11th Cir. 1999) (*per curiam*) ("Probable cause to support a search warrant exists when the totality of the circumstances allow a conclusion that there is a fair probability of finding contraband or evidence at a particular location." (citation omitted)). "Specifically, the affidavit should establish a connection between the defendant and the residence to be searched and a link between the residence and any criminal activity." United States v. Martin, 297 F.3d 1308, 1314 (11th Cir. 2002) (citation omitted). The Court is mindful, however, that "probable cause deals 'with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" United States v. Miller, 24 F.3d 1357, 1361 (11th Cir. 1994) (citing Gates, 462 U.S. at 241). Moreover, these probabilities need not come from direct observation but may be inferred from the particular circumstances at issue.[4] United States v. Jenkins, 901 F.2d 1075, 1080 (11th Cir. 1990). "[P]robable cause is a fluid concept turning on the assessment of probabilities in particular factual contexts. . . ." Gates, 462 U.S. at 232.

Also, sufficient information must be presented to the judicial officer to allow for the exercise of independent judgment; the judicial officer cannot simply ratify the conclusions of others. Gates, 462 U.S. at 239. However, common sense must be employed when reading the affidavit, United States v. Ventresca, 380 U.S. 102, 108 (1965), and the Court is guided by the principle that the affidavit supporting a search warrant is presumed valid. Franks v.

---

[4]Notably, probable cause may be based on evidence that would not be legally competent in a criminal trial. Draper v. United States, 358 U.S. 307, 311-12 (1959).

Delaware, 438 U.S. 154, 171 (1978). A court reviewing the decision of a judicial officer concerning the existence of probable cause gives "great deference" to that determination. United States v. Leon, 468 U.S. 897, 914 (1984); United States v. Gonzalez, 940 F.2d 1413, 1419 (11th Cir. 1991). Thus, "the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed." Cauchon v. United States, 824 F.2d 908, 911-12 (11th Cir. 1987) (citing Gates, 462 U.S. at 238-39).

Here, upon examination of the totality of the circumstances, the Court concludes that Magistrate Judge Jennings had a substantial basis for concluding that probable cause existed to issue the search warrant. Inv. Ashmore's affidavit recounted how he came to be in contact with the Thomases based on the recent criminal activity at the First Alliance Church located at 2801 Ingleside Drive. (Aff., ¶¶ 4-6, 10). The affidavit also explained that Defendant lived at 2809 Ingleside Drive and that a 9-1-1 call reporting problems at the First Alliance Church had been tracked through tentative voice identification and phone number tracing not to the name of the reported caller, but to Defendant. (Id. ¶¶ 7-10). Inv. Ashmore also stated in his affidavit that Defendant had identified himself as a law enforcement officer three to four times over the last several years, with the last time occurring when he so-identified himself to Joyce Thomas approximately five days prior to the issuance of the search warrant. (Id. ¶ 10). Moreover, the affidavit informed Magistrate Judge Jennings of Defendant's criminal history, which included multiple charges and arrests for impersonating a public officer or employee and/or impersonating a police officer, as well as a first offender conviction for impersonating a police officer. (Id. ¶ 11).

The development of probable cause was also supported by the information in Inv. Ashmore's affidavit that he had relied on his training and experience as a basis for believing that Defendant would be in the unlawful possession of law enforcement related items and that those items would be located in, *inter alia*, his residence and vehicle. (Aff., ¶¶ 12-13). Although Defendant apparently takes issue with whether an officer's training and experience can be used in combination with other factors to establish probable cause, the issue has been long-settled in the Eleventh Circuit. United States v. Jenkins, 901 F.2d 1075, 1081 (11th Cir. 1990) (confirming appropriateness of officer applying for warrant relying on conversation with 17-year veteran FBI agent who had worked for 10 years on bank robbery and burglary matters to support finding of probable cause in warrant affidavit that fruits of theft likely to be found in residence to be searched); see also United States v. Robinson, 62 F.3d 1325, 1331 n.9 (11th Cir. 1995) ("[O]pinions and conclusions of an experienced agent regarding a set of facts are properly a factor in the probable cause equation for issuing a search warrant." (internal quotation marks and citation omitted)). As noted above, there were several other factors, combined with Inv. Ashmore's training and experience, presented to Magistrate Judge Jennings that all contributed to establishing probable cause to believe that items associated with the offense of impersonating a law enforcement officer would be found in Defendant's residence.

As to the purported "staleness" of the information about Defendant's representations to the Thomases concerning his status as a law enforcement officer, there is no "talismanic rule which establishes arbitrary time limitations for presenting information to a magistrate," and each case must be based on the specific facts presented. United States v. Harris, 20 F.3d

7

445, 450 (11th Cir. 1994).⁵ When making this case-by-case determination, courts "may consider the maturity of the information, nature of the suspected crime (discrete crimes or ongoing conspiracy), habits of the accused, character of the items sought, and nature and function of the premises to be searched." Id.

Here, although the Thomases reported that Defendant had identified himself as a law enforcement officer three to four times over several years, the last such statement had been made to Joyce Thomas less than one week before the warrant issued. (Aff., ¶ 10). Moreover, Defendant had multiple charges and arrests for impersonating a public officer or employee and/or impersonating a police officer, as well as a first-offender conviction for impersonating a police officer, some of which apparently occurred during part of the same time period that he was reported to have made his statements to the Thomases. (Id. ¶ 11). The Court is also mindful that Defendant's statements were but one part of the entirety of the information collected and analyzed by Inv. Ashmore, an analysis guided by his training and experience in dealing with subjects involved in similar unlawful schemes. (Id. ¶ 13). Thus, the age of the information about Defendant's reported statements to the Thomases about his status as a law enforcement officer did not undermine the finding of probable cause.

In sum, the Court **FINDS** that probable cause existed to support the issuance of the search warrant by Magistrate Judge Jennings.

---

⁵In Harris, the court determined that there was no "staleness" problem where most of the information described in the affidavit for a search warrant occurred over two years before the warrant application, but the affidavit described a "longstanding and protracted criminal conspiracy" that had been documented in interviews with confidential informants and identified/investigated with reliance on the warrant applicant's personal experience as a law enforcement officer. Harris, 20 F.3d at 450-51.

**B.     Good Faith Exception**

Even if the Court had determined that probable cause to support the issuance of the warrant had not been established, the evidence discovered as a result of the execution of the contested search warrant would be admissible under the "good-faith" exception to the exclusionary rule set forth in United States v. Leon, 468 U.S. 897 (1984).

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," U.S. Const. amend. IV, and the judicially created remedy known as the exclusionary rule acts as a deterrent to violating the Fourth Amendment by preventing the use of evidence seized as a result of an illegal search. United States v. Martin, 297 F.3d 1308, 1312 (11th Cir. 2002). However, under Leon, the good-faith exception allows the introduction of evidence in the prosecution's case in chief that is "seized by officers reasonably relying on a warrant issued by a detached and neutral magistrate." Leon, 468 U.S. at 913. The Leon Court explained that the good-faith exception to the exclusionary rule was appropriate because "the exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates." Id. at 916. Thus, under Leon, the question becomes whether the officers executing the warrant reasonably relied on Magistrate Judge Jennings's determination of probable cause. See id. at 913.

Under Leon, there are four scenarios under which the good-faith exception to the exclusionary rule would not apply. Id. at 923. The exception does not apply where the judge issuing the warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth. Id. Nor does

9

the exception apply in cases where the issuing judge "wholly abandoned" his or her detached and neutral judicial role such that no reasonably well trained officer would rely on the warrant. Id. The warrant must not be based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," and the warrant must not be so "facially deficient" that the executing officers could not reasonably presume it was valid. Id.

Here, as the government notes (doc. no. 11, p. 5), Defendant has not alleged dishonest or reckless behavior, and nothing in the record points to any such behavior. Nor is there any suggestion or evidence that Magistrate Judge Jennings "wholly abandoned" his detached and neutral role in issuing the warrant. There is also nothing to suggest that the warrant was in any way "facially deficient" such that the executing officers could not reasonably presume its validity. Thus, unless the warrant was so lacking in indicia of probable cause so as to render belief in its existence entirely unreasonable, the good faith exception could be applied in this case. See Leon, 468 U.S. at 923. However, as set forth above, there were multiple factors presented in Inv. Ashmore's affidavit that supported a finding of probable cause, including Inv. Ashmore's training and experience, the reports of the Thomases concerning Defendant representing himself to be a law enforcement officer as recently as five days prior the issuance of the warrant, and Defendant's criminal history related to impersonating an officer. Accordingly, it was not unreasonable to believe that probable cause existed.

In sum, the Court **FINDS** that even if probable cause to support the issuance of the warrant had not been established, a position discredited above in Part II(A), the evidence discovered as a result of the execution of the contested search warrant would be admissible

under the good-faith exception to the exclusionary rule set forth in Leon.

### C.     Evidentiary Hearing Not Required under Franks v. Delaware

Lastly, at the April 15th hearing, defense counsel expressed his desire to question Inv. Ashmore about his training and experience that caused him to conclude that persons involved in impersonating a law enforcement officer often maintain items associated with law enforcement officers in their residence, vehicles, sheds, and outbuildings. (See Aff., ¶ 13). However, as the Court explained from the Bench, in order to question Inv. Ashmore about his affidavit, Defendant must satisfy the dictates of Franks v. Delaware, 438 U.S. 154 (1978). He has not done so.

In Franks, the Supreme Court held that facially valid search warrant affidavits - such as the one in the instant case - may be challenged if: (1) the affidavit contains intentionally or recklessly false statements, and (2) the statements are material in the sense that they were necessary to the finding of probable cause. Id. at 171-72. Although Franks makes clear that an affidavit supporting an application for a search warrant is presumed to be valid, id. at 171, the Supreme Court set forth the following standard to obtain an evidentiary hearing to challenge alleged misrepresentations in a warrant application:

> To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained.

Id.

The Court afforded defense counsel ten (10) days from April 15th to submit a supplemental brief with the requisite information, if it existed, to justify a Franks hearing. No supplemental brief was submitted. In the absence of the requisite information, there is no basis for convening an evidentiary hearing simply to allow the defense to go on a fishing expedition. The presumption of the validity of the affidavit in support of the application for a search warrant must be honored. Thus, the Court concludes that there is no basis for recommending the suppression of evidence based on an unsubstantiated Franks v. Delaware challenge.

### III. CONCLUSION

In conclusion, the Court finds that the search warrant issued by Magistrate Judge Jennings, authorizing the search of, *inter alia*, Defendant's residence, was supported by probable cause. Alternatively, the Court finds that even if probable cause to support the issuance of the warrant had not been established, the evidence discovered as a result of the resultant search would be admissible under the good-faith exception set forth in United States v. Leon, 468 U.S. 897 (1984). Therefore, the Court **REPORTS** and **RECOMMENDS** that the motion to suppress be **DENIED**.

SO REPORTED and RECOMMENDED this 14th day of May, 2008, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE